Filed 9/30/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MIGUEL TELLEZ | H040375 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. 1-12-CV-227103) |
| v. | |
| RICH VOSS TRUCKING, INC., et al., | |
| Defendants and Respondents. | |

Plaintiff Miguel Tellez appeals the trial court's denial of his motion for class certification in what is essentially a wage-and-hour dispute. For reasons that follow, we must reverse the order denying class certification and remand to the trial court for an explanation of the court's reasoning in denying the motion.

*Facts and Proceedings Below*

It is undisputed that plaintiff is a truck driver who worked for Rich Voss Trucking.

On June 22, 2012, plaintiff filed a putative class action complaint against Rich Voss Trucking, Inc. (RVT), Stevens Creek Quarry, Inc. (SCQ), and Richard A. Voss (collectively defendants) alleging wage and hour violations. Specifically, plaintiff contended that defendants were his joint employers and the employers of all similarly situated non-exempt current and former employees of defendants. Plaintiff's class action complaint alleged 10 causes of action: (1) failure to provide required meal periods (Lab. Code, §§ 226.7, 510, 512, 1194, 1197[1]: IWC[2] wage order No. 16-2001), (2) failure

---

[1] All further statutory references are the the Labor Code unless otherwise indicated.

[2] IWC stands for Industrial Welfare Commission.

to provide required rest periods (§§ 226.7, 512; IWC wage order No. 16-2001), (3) failure to pay overtime wages (§§ 226, 510, 1194, 1197; IWC Order No. 16-2001), (4) failure to pay minimum wage (§§ 226, 510, 1194, 1197; IWC Order No. 16-2001), (5) failure to pay all wages due to discharged or quitting employees (§§ 201, 202, 203), (6) failure to maintain required records (§§ 1174, 1174.5), (7) failure to indemnify employees for necessary expenditures incurred in the discharge of duties (§ 2802), (8) failure to provide accurate itemized wage statements (§§ 226, 226.3), and (9) unfair and unlawful business practices (Bus. & Prof. Code, §§ 17200-17208). Plaintiff alleged a tenth cause of action under the Private Attorneys General Act of 2004 for a representative action for civil penalties (§§ 2698, 2699.5). In the complaint, plaintiff alleged that he was bringing the action on "behalf of himself and others similarly situated current and former employees in the State of California (collectively PLAINTIFFS) of RICH VOSS TRUCKING, INC. (RVS), STEVENS CREEK QUARRY (STEVENS CREEK) and DOES 1-100 (collectively DEFENDANTS) . . . ."

On the same day that plaintiff filed his original complaint in the class action lawsuit, he filed a separate complaint (the individual complaint) against defendants and Steve A. Martini. This complaint alleged three causes of action: (1) disability discrimination, disability harassment, failure to take all reasonable steps to prevent discrimination, failure to accommodate, failure to engage in the interactive process, and retaliation (Gov. Code, § 12940); (2) racial discrimination, racial harassment, failure to take all reasonable steps to prevent discrimination and harassment (*Ibid.*); and (3) national origin/ancestry discrimination, national origin/ancestry harassment, and failure to take all reasonable steps to prevent discrimination and harassment (*Ibid.*). Although the two cases were consolidated for trial and plaintiff filed a first amended

complaint[3] in both cases, it is only with the denial of class certification and the denial of his motion to amend the complaint to add a new class representative in the class action lawsuit that plaintiff takes issue.

On April 3, 2013, defendants brought a motion to strike the class allegations because plaintiff had failed to file a motion to certify the class.[4] Defendants asserted that plaintiff was not a suitable class representative because his claims were not typical, as plaintiff worked for RVT only as a truck driver; and truck drivers are regulated by the Federal Department of Transportation Regulations and are exempt from California's overtime rules. Further, defendants contended that plaintiff was not an adequate representative because of his impaired credibility since he had lied on his employment application when he told RVT that he had never been convicted of a felony.[5]

Plaintiff opposed the motion as "an improper attempt to 'slip through the backdoor' with a preemptive opposition to a motion for class certification that ha[d] not yet been filed"; plaintiff blamed defendants for his delay in not filing a motion for class certification by not providing documents relevant to the class allegations. In reply, defendants asserted that plaintiff's attempt to blame them for the delay in filing the motion for class certification was misplaced and that their motion to strike the class allegations should be granted so the matter could proceed to trial. Plaintiff filed an

---

**[3]** In plaintiff's first amended complaint in the class action case, plaintiff alleged that he was bringing the action "on behalf of himself and the following similarly situated class of individuals (CLASS MEMBERS): all current and former non-exempt employees of DEFENDANTS in the State of California at any time within the period beginning four years prior to the filing of [the] action and ending at the time [the] action settles or proceeds to final judgment (the CLASS PERIOD)."

**[4]** We note that generally, in cases involving wage and hour claims, the issue of class suitability should not be determined at the pleading stage of the case. (*Prince v. CLS Transportation, Inc.* (2004) 118 Cal. App. 4th 1320, 1325.)

**[5]** In his deposition testimony, plaintiff conceded that he was convicted of committing a lewd or lascivious act upon a child by force (Pen. Code, § 288, subd. (b)).

3

ex parte application for an order to extend the deadline to file his motion for class certification. The court granted the request and extended the time for plaintiff to file the motion until August 9, 2013.[6]

On August 12, 2013, plaintiff filed a motion for leave to amend the complaint to add Christopher Hart as the new class representative and a memorandum of points and authorities in support of his motion for class certification. Attached to the memorandum of points and authorities were several exhibits including a declaration by Keila A. Carrasco,[7] who had analyzed time records of the employees of SQC and RVT; plaintiff attached over 12,000 pages of time records as exhibits to the motion. Ms. Carrasco averred that in reviewing the records she found violations that included missed meal breaks, late meal breaks, missed second meal breaks, unpaid overtime hours after working an 8-hour shift, unpaid overtime hours after working a 10-hour shift, and unpaid double time hours after working a 12-hour shift.

Defendants responded to plaintiff's motion by claiming that class certification was not appropriate because there were not common questions of law or fact that would predominate. Defendants asserted that plaintiff's claim for overtime was misplaced because RVT truck drivers are exempt from overtime requirements,[8] and because RVT

_____

**[6]** Plaintiff filed a second application for an order to extend the deadline to file the class certification, which was denied.

**[7]** It appears that Ms. Carrasco was employed in the law offices of plaintiff's counsel. Although she graduated with a J.D. from the University of California, Hastings in 2006, she was employed as a law clerk. Her analysis of the time records constituted a basic clerical and arithmetical summary of the information contained in the documents produced by the defendants.

**[8]** We assume that defendants were arguing that they came within the motor carrier exemption in the California Labor Code. "IWC Wage Order No. 9, regulating wages, hours and working conditions in the transportation industry, excludes from its overtime pay requirements 'employees whose hours of service are regulated by . . . the United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13.' [Citations.]" (*Watkins v. Ameripride Services* (9th Cir. 2004) 375 F.3d (continued)

4

and SCQ have policies and procedures that fully comply with the California Labor Code and California Wage Orders, individualized inquiries would be necessary to prove whether or not the policies were followed. Defendants again raised the issue of plaintiff's not being an adequate representative because of his credibility issues. Defendants argued that they were prepared for trial and by allowing plaintiff to amend the complaint to add a new class representative they would have to reopen discovery, which would allow plaintiff another delay to bring a second motion for class certification and significantly delay the resolution of the case.

At some point the court set the hearing on the motion for class certification on September 10, 2013.

At the hearing on September 10, 2013, after counsel announced their presence for the record, the court noted that it had "received no phone call regarding the motion itself." The court asked if counsel wanted to go ahead and set the trial date. Plaintiff's counsel told the court that he "would like to be heard on both the motion to amend and the motion for class certification." The court cut off plaintiff's counsel. The court stated that plaintiff's counsel had not contacted the court and asked whether he had contacted opposing counsel. Plaintiff's counsel apologized to the court for not contacting opposing counsel, but explained that he had been out of the office in a mediation and had a trial starting that day.

The court told counsel, "We can't hear the argument. You'll have to talk with [opposing counsel]. But right now we're going to discuss trial setting." Plaintiff's counsel stated that he had "no problem with setting it now." However, when plaintiff's

---

821, 825 (*Watkins*).) "Sections 395.1 to 395.13 set the federal maximum hour restrictions for employees of motor carriers. However, these regulations are only applicable to motor carriers and drivers engaged in interstate commerce." (*Ibid.*) As far as we can tell from the record, defendants made no showing that they were involved in interstate commerce rather than intrastate commerce.

counsel pointed out to the court that the tentative decision consisted of one sentence saying that the motion was denied and asked if the court was going to issue a more detailed ruling,[9] The trial judge responded, "I don't intend to." When counsel asked for "some kind of findings on the record" for purposes of appeal so that on appeal this court "would have some basis to know whether there was [*sic*] issues with numerosity, capability, commonality, adequacy—" the court cut off plaintiff's counsel and stated that it was "not discussing the motion right now. There was no phone call."[10]

---

[9] Defendants do not dispute the fact that the tentative decision stated only that the motion was denied.

[10] We assume that the court's reference to "no phone call" was a citation to a Santa Clara County local rule of court. The Superior Court of Santa Clara County, Local Rules, rule 8E provides, "The Court follows CRC 3.1308(a)(1) for those departments that have elected to issue tentative rulings in civil law and motion and discovery matters. Counsel and litigants are responsible for determining whether the department hearing their motion has made this election. Those departments issuing tentative rulings will do so generally by 2:00 p.m., and no later than 3:00 p.m., on the court day preceding the scheduled hearing. If the Court has not directed oral argument, *a party contesting a tentative ruling must give notice of its intention to appear to the other side and the Court no later than 4:00 p.m. on the court day preceding the scheduled hearing*. Appearances may be [made] by telephone (through CourtCall) or in person. The tentative ruling will automatically become the order of the Court on the scheduled hearing date if the Court has not directed oral argument *and if the contesting party fails to timely notice an objection to the other side and the Court*. Tentative rulings will be posted on the Court's website, www.scscourt.org, where further information may be found. If a party does not have access to the internet, the tentative ruling may be accessed by calling Court Services at (408) 882-2515. Questions about these procedures may be addressed to the specific department where the matter is to be heard." (Italics added)

In turn, California Rules of Court, rule 3.1308(a) provides, "A trial court that offers a tentative ruling procedure in civil law and motion matters must follow one of the following procedures: [¶] (1) *Notice of intent to appear required* [¶] The court must make its tentative ruling available by telephone and also, at the option of the court, by any other method designated by the court, by no later than 3:00 p.m. the court day before the scheduled hearing. If the court desires oral argument, the tentative ruling must so direct. The tentative ruling may also note any issues on which the court wishes the parties to provide further argument. If the court has not directed argument, oral argument must be permitted only if a party notifies all other parties and the court by 4:00 p.m. on (continued)

6

The court's order on plaintiff's motion for class certification states, "Plaintiff's Motion for Class Certification is DENIED."  Similarly, the court's order on plaintiff's motion for leave to amend the complaint states, "Plaintiff's Motion for Leave to Amend is DENIED."

On appeal, plaintiff contends that the denial of certification cannot be affirmed as a matter of law, because it states no " 'valid pertinent reason' " sufficient to uphold the order.[11]

*Discussion*

*Denial of Plaintiff's Motion for Class Certification*

At the outset we note that the denial of certification to an entire class is an appealable order.  (*Linder v. Thrifty Oil Co*. (2000) 23 Cal.4th 429, 435 (*Linder*).)  This order has what has come to be known as the "death knell" effect of making further proceedings in the action impractical because of denial of class action status.  Our Supreme Court has held that where an order has the "death knell" effect of making further proceedings in the action impractical, the order is appealable.  (See *Daar v. Yellow Cab Co*. (1967) 67 Cal.2d 695, 699 [the legal effect of the order is tantamount to a dismissal of the action as to all members of the class other than plaintiff.  It has virtually demolished the action as a class action.  If the propriety of such disposition could not now be reviewed, it can never be reviewed].)

the court day before the hearing of the party's intention to appear.  A party must notify all other parties by telephone or in person.  The court must accept notice by telephone and, at its discretion, may also designate alternative methods by which a party may notify the court of the party's intention to appear.  The tentative ruling will become the ruling of the court if the court has not directed oral argument by its tentative ruling and notice of intent to appear has not been given."

[11] In addition, plaintiff contends that the superior court abused its discretion by denying his motion for certification because no substantial evidence supports the denial.  As we shall explain, it is impossible to address this question as we have no idea upon what basis the superior court denied the certification motion.

7

As our Supreme Court explained in *Linder*, *supra*, 23 Cal.4th 429, "[c]ourts long have acknowledged the importance of class actions as a means to prevent a failure of justice in our judicial system. [Citations.] ' "By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress . . . ." ' [Citation.] Generally, a class suit is appropriate 'when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer.' [Citations.] But because group action also has the potential to create injustice, trial courts are required to ' "carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts." ' [Citations.]" (*Id*. at pp. 434-435.)

"Section 382 of the Code of Civil Procedure authorizes class suits in California when 'the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court.' To obtain certification, a party must establish the existence of both an ascertainable class and a well-defined community of interest among the class members. [Citations.] The community of interest requirement involves three factors: '(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' [Citation.] Other relevant considerations include the probability that each class member will come forward ultimately to prove his or her separate claim to a portion of the total recovery and whether the class approach would actually serve to deter and redress alleged wrongdoing. [Citation.]" (*Linder*, *supra*, 23 Cal.4th at p. 435.)

"Class certification is generally not decided at the pleading stage of a lawsuit. '[T]he preferred course is to defer decision on the propriety of the class action until an evidentiary hearing has been held on the appropriateness of class litigation.' [Citation.]

8

However, if the defects in the class action allegations appear on the face of the complaint or by matters subject to judicial notice, the putative class action may be defeated by a demurrer or motion to strike.  [Citation.]"  (*In re BCBG Overtime Cases* (2008) 163 Cal.App.4th 1293, 1298-1299.)

Since "trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification.  The denial of certification to an entire class is an appealable order [citations], but in the absence of other error, a trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]'  [Citation.]  Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal ' "even though there may be substantial evidence to support the court's order." '  [Citations.] Accordingly, we must examine the trial court's reasons for denying class certification. 'Any valid pertinent reason stated will be sufficient to uphold the order.'  [Citation.]" (*Linder*, *supra*, 23 Cal.4th at pp. 435-436.)

Despite the great discretion afforded to the trial court, "appellate review of orders denying class certification differs from ordinary appellate review.  Under ordinary appellate review, we do not address the trial court's reasoning and consider only whether the result was correct.  [Citation.]  But when denying class certification, the trial court must state its reasons, and we must review those reasons for correctness.  [Citation.]" (*Knapp v. AT & T Wireless Services*, *Inc*. (2011) 195 Cal.App.4th 932, 939 (*Knapp*); Accord *Linder*, *supra*, 23 Cal.4th at p. 436 [we must examine the trial court's reasons for denying class certification].)

Defendants take the position that plaintiff is seeking to overturn the court's ruling for his own error.  That is, plaintiff failed to request oral argument to contest the court's tentative ruling.  We are not persuaded by this argument.  Further, defendants argue that the trial court is not required to state its reasons in the order denying the motion.  While

9

defendant is correct that the trial court is not required to state its reasons in the actual order denying the motion, (*Knapp*, *supra*, 195 Cal.App.4th at p. 939) we must be able to discern from somewhere in the record "whether the trial court engaged in correct legal analysis." (*Caro v. Proctor Gamble Company* (1993) 18 Cal.App.4th 644, 655.)

Defendants cite *Walsh v. Ikon Office Solutions*, *Inc.* (2007) 148 Cal.App.4th 1440 (*Walsh*), *Dailey v. Sears Roebuck & Co.* (2013) 214 Cal.App.4th 974 (*Dailey*) and *Grogan-Beall v. Ferdinand Roten Galleries*, *Inc.* (1982) 133 Cal.App.3d 969 (*Grogan-Beall*), for the proposition that we can "infer" from the record the reasons upon which the lower court relied in denying class certification.

Certainly, California courts have held that even if the trial court's *order* on class certification does not state reasons, or does so without providing detail, it will be deemed sufficient for review purposes so long as the basis for the court's ruling may be discerned from the record. (See e.g., *Grogan-Beall*, *supra*, 133 Cal.App.3d 969, 976 [noting that it was obvious from the record the certification dispute turned on the issue of commonality of interest].) However, in *Grogan-Beall*, the trial court decertified the class without explanation *after* a jury trial. (*Id.* at p. 972.) Accordingly, the *Grogan-Beall* court was able to conclude, "Although the trial court did not state its reasons for the decertification order, it is clear from the record that the dispute over class treatment turned on the issue of commonality of interest in law and fact. Defendants' moving papers focused on the assertion that defendants' liability to each unnamed plaintiff would have to be individually litigated in various respects. Defendants relied on *Weaver v. Pasadena Tournament of Roses* (1948) 32 Cal.2d 833 and *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447 to argue that the *facts developed at the trial*, nearly two years after the original conditional certification, showed that individual issues dominated the case. It is clear that the trial court's decertification order was based on insufficient commonality to justify class treatment." (*Id.* at p. 976, italics added.)

10

Plainly, in *Grogan-Beall*, the record consisted of the trial record where the parties' arguments and evidence as well as the court's own ruling and findings during trial gave the reviewing court sufficient content and context to determine the basis for the court's decertification order. There is nothing remotely similar in this case.

In *Dailey*, *supra*, 214 Cal.App.4th 974, in a "brief order, the trial court granted Sears's motion to preclude and denied Dailey's motion to certify the class, concluding that 'the individual facts and issues unique to each member of the alleged class and requiring separate adjudication are more numerous and significant than the common issues.' " (*Id*. at p. 978.) In *Dailey*, the trial court "*did* state its reasons i.e., the predominance of individual issues and the ability to bring individual claims before the court." (*Id*. at p. 986.) Further, the order cited "appropriate legal principles relevant to the predominance and superiority analysis." (*Ibid*.) Accordingly, the reviewing court was able to conclude that the "trial court's order, *elucidated* by the parties' briefing and oral arguments, [was] sufficient to permit meaningful appellate review in [the] case." (*Id*. at p. 987, italics added.)

In *Walsh*, *supra*, 148 Cal.App.4th 1440, the trial court "granted IKON's decertification motion on the ground of insufficient commonality. The court explained: 'Common issues of law and fact do not predominate in this matter with respect to the LDS account manager class, as the circumstances of each class member's employment differs significantly from every other member of the class. As a result, individual hearings on both liability and damages are required for each of the 150 or so class members, as well as the two class representatives, Walsh and Miller. In these circumstances, and on the evidence presented in support of and in opposition to the motion, the Court concludes that common issues of law or fact do not predominate.' " (*Id*. at pp. 1452-1453.) The *Walsh* court noted that although "the trial court did not explain *at length* why it concluded there was a lack of commonality" (*id*. at p. 1452, italics added) "it did refer to different employment circumstances among the subclass

11

members" (*ibid*.), accordingly, the reviewing court was able to conclude that "the trial court's explanation was not so vague that [it was] unable to determine whether substantial evidence support[ed] the decision." (*Id*. at p. 1483.)

The cases to which defendants cite all involved some degree of written or oral explanation, even if not detailed, but with some way for the reviewing court to deduce what was the court's reasoning.

Here, the trial court's order denying class certification is devoid of any explanation and nothing in the record of the hearing or anywhere else in the record illuminates the trial court's thinking.[12] Defendants cite no authority where the record is so devoid of explanation that it is impossible to comply with the Supreme Court's mandate that "we must examine the trial court's reasons for denying class certification." (*Linder*, *supra*, 23 Cal.4th at p. 436.) We cannot tell if improper criteria were used or erroneous legal assumptions were made. Without some indication in the record of the trial court's thinking sufficient to give this court insight into how the lower court reached its decision, any link between the moving papers and the court's decision would be pure conjecture on our part. Plainly, our standard of review requires that there be some enunciation of a reason or basis for denial of class certification from which we can determine the soundness of the lower court's decision. To hold otherwise would mean that in every case where there is a denial of class certification without explanation in the order or in the record, appellate courts would be placed in the role of trial courts, in essence, deciding the matter de novo and supplying a rationale not stated by the trial court; such is not our standard of review in evaluating the correctness of a denial of a motion for class certification. "The right result is an inadequate substitute for an

---

**12** As noted, the hearing on the motion for class certification was scheduled for September 10, 2013. The trial judge adopted the one-line tentative decision and refused to discuss the matter further.

12

incorrect process. Thus the appellate scrutiny should be on the reasons expressed by the trial court in the context of counsel's arguments, not merely whether the trial court reached a result [that] can be justified by implication." (*Clothesrigger, Inc. v. GTE Corp.* (1987) 191 Cal.App.3d 605, 611-612 (*Clothesrigger, Inc.*).)

In *Clothesrigger, Inc.*, the trial court, in denying a motion to modify the definition of a class in a class action lawsuit, did not engage in the analysis that was required by case law. (*Clothesrigger, Inc.*, *supra*, 191 Cal.App.3d at p. 612.) Thus, the reviewing court said, "[o]ur focus on correct process requires us to reverse even though there may be substantial evidence to support the court's order." (*Ibid.*) We reach a similar conclusion in this case.

As to defendants' argument that plaintiff failed to request oral argument to contest the trial court's tentative ruling, plainly plaintiff was not contesting the ruling; rather, plaintiff was requesting an explanation for the court's ruling more along the lines of a request for a statement of decision.

As noted *ante*, Local Rule 8(E) provides that "a party *contesting* a tentative ruling must give notice of its intention to appear," and that the tentative ruling will become the order "if the Court has not directed oral argument and if the *contesting* party fails to timely notice an *objection* to the other side and the Court." Plainly, plaintiff's request for an explanation of the court's ruling falls outside this rule.

Regrettably, we must remand this case to the trial court to reconsider the motion, and in the event that it again denies the motion, articulate its reasoning.

*Denial of Plaintiff's Motion to Amend the Complaint to Add a New Class Representative*

Without argument or citation to authority, in his opening brief, plaintiff claimed that if the court had entertained concerns as to the adequacy of the class representative, the court should have granted his motion to add a new class representative. Plaintiff presented the following question for our review: "Did the Superior Court abuse its discretion by failing to grant Plaintiff['s] Motion to Amend the Complaint?" Plaintiff

13

presented no argument in favor of his position that the trial court did abuse its discretion. In his reply brief, plaintiff claims for the first time that the court erred in denying his motion to amend the complaint to add a new class representative. He presents legal argument and citation to authority to support this position.

In general, " '[p]oints raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument.' [Citation.] 'Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant.' [Citation.] ' "Obvious considerations of fairness in argument demand that the appellant present all of his points in the opening brief. To withhold a point until the closing brief would deprive the respondent of his opportunity to answer it or require the effort and delay of an additional brief by permission. Hence the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before." ' [Citation.]" (*Reichardt v. Hoffman* (1997) 52 Cal. App. 4th 754, 764, as modified on denial of rehearing (Mar. 5, 1997).)

An appellant has the burden to demonstrate reversible error with reasoned argument and citation to authority. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*); California Rules of Court, rule 8.204(a)(1)(B), [each brief must state each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority].) When an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited. (*Badie*, *supra* at pp. 784-785.) On appeal we need address only the points adequately raised by plaintiff in his opening brief on appeal. (*Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1345 & fn. 6 [appellant forfeits issue by failing to raise it in the opening brief].) Plaintiff failed to adequately brief the issue of the denial of his motion to amend the complaint to add a new class representative; accordingly, we deem the issue forfeited.

14

*Disposition*

The order denying plaintiff's class certification motion is reversed.

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.


_____

WALSH, J.[*]


---

[*]Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-12-CV-227103 |
|---|---|
| Trial Judge: | Hon. Kevin E. McKenney |
| Counsel for Plaintiff/Appellant:<br>Miguel Tellez | Matern Law Group<br>Matthew J. Matern<br>Rania S. Habib |
| Counsel for Defendants/Respondents:<br>Rich Voss Trucking, Inc., et al., | Miller, Morton, Caillat & Nevis<br>David I. Kornbluh<br>Stephanie M. Rocha<br>Courtney J. Rogerson |

*Tellez v. Rich Voss Trucking*, *Inc.*, *et al.*
H040375